UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


Shakopee Chevrolet & Pontiac, Inc.,

     Plaintiff,

v.                                              MEMORANDUM OPINION
                                                AND ORDER
                                                Civil No. 07-4632


General Motors Corporation,

     Defendant.

_____

     William R. Skolnick and Sean A. Shiff, Solnick & Shiff, P.A. for and on behalf of Plaintiff.

     Christopher W. Fowlkes and Michael R. Carey, Bowman & Brooke, LLP for and on behalf of Defendant.

_____

     Plaintiff Shakopee Chevrolet & Pontiac, Inc. ("Shakopee") had previously filed an action against Defendant General Motors Corporation ("GM") in 2002, in which Plaintiff alleged various claims involving GM's discontinuance of its Oldsmobile line.   The parties settled the lawsuit and executed a Supplemental Settlement Agreement and Release dated September 9, 2005 ("Settlement Agreement").   Pursuant to the Settlement Agreement, GM agreed, *inter alia*, to

1

award Shakopee a standard letter of intent for Shakopee to become a GMC truck

dealer if Shakopee sold 370 new retail Chevrolet and Pontiac vehicles during

2006.  Settlement Agreement, Sections 2.3 and 2.4.

> The Settlement Agreement further provided:

> GM agrees that it will meet with Shakopee in the fall of 2005 and the
> Parties will mutually agree that Shakopee shall order, and GM shall ship,
> at least a 60-day supply of new Pontiac and Chevrolet vehicles for each
> model and make sold by Chevrolet and Pontiac, subject to the Parties
> revision if there is an unanticipated act by a third party which prevent
> shipment by GM.

Id. Section 2.5.

Shakopee has filed this action alleging that GM has breached the

Settlement Agreement.  Specifically, Shakopee alleges that the parties met in late

2005 and early 2006, and negotiated a 60-day supply of vehicles whereby GM

agreed to provide 43 Pontiac Solstices, 6 Chevrolet Corvette Z06's, 4 Chevrolet

Corvettes, 8 Suburbans, 4 Tahoes, 15 HHR LS'2, 10 G6 Convertibles, and 8 Vibes.

Shakopee asserts that these were the hottest selling vehicles at that time.  In late

January 2006, GM renegotiated the number of hotter selling vehicles to ship to

Shakopee - such as shipping 40 Solstices instead of 43, and 7 Corvettes instead of

10.  In February 2006, GM allegedly told Shakopee that it would not honor the

Settlement Agreement because to do so would cause it to be sued by other dealers. Shakopee asserts that despite repeated written and verbal demands, GM only shipped 3 Solstices and refused to ship any Corvettes.

Shakopee further asserts that upon information and belief, GM is restricted from awarding Shakopee the GMC truck dealership and that GM failed to disclose the same to Shakopee.

In this action, Shakopee has asserted three causes of action: breach of the Settlement Agreement; breach of good faith and fair dealing; and violation of Minn. Stat. § 80E.01.

Currently before the Court is GM's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Standard

A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). When addressing GM's motion to dismiss, the Court takes all facts alleged in Shakopee's complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Further, the Court must construe the allegations in the complaint and reasonable inferences arising

therefrom favorably to Shakopee.  Id.  The Court applies those standards in the

following discussion.

Analysis

    1.  Breach of Contract

    In its Complaint, Shakopee asserts that GM breached the Settlement

Agreement "by, among other things, refusing to produce and ship the agreed

upon number and type of vehicles to Shakopee."  Complaint, ¶ 22.  Further,

Shakopee asserts that GM frustrated Shakopee's ability to meet its target of

selling 370 vehicles, which would grant it the right to become a GMC truck

dealer.  Id. ¶ 23.

    GM asserts that the breach of contract claim must be dismissed because

Shakopee has not stated a claim.  The Settlement Agreement provides that GM

was not obligated to ship any vehicles unless such vehicles were ordered by

Shakopee.  See, § 2.5.  Shakopee has not alleged, however, that it ordered the

vehicles in question.  To the extent that Shakopee has alleged that it made

repeated written and verbal demands as a proxy for ordering the vehicles, such

allegations are not a proper substitute for "ordering."  GM asserts that Shakopee

must have ordered the vehicle, and that GM did not deliver the vehicle, to state a

claim.

Pursuant to the law of Michigan[1], the Court finds that Shakopee has sufficiently stated a claim of breach of the Settlement Agreement.  Shakopee has correctly pointed out that GM's interpretation of the Settlement Agreement ignores that the Settlement Agreement contemplated a future meeting and negotiation to determine what vehicles GM would ship. ("GM agrees that it will meet with Shakopee in the fall of 2005 and the Parties will mutually agree that Shakopee shall order, and GM shall ship, at least a 60-day supply of new Pontiac and Chevrolet vehicles for each model and make sold. . . ").  It is Shakopee's position that the parties were free to negotiate the 60-day supply of new vehicles, while GM asserts that this clause did not guarantee Shakopee would receive more of the "hotter" selling vehicles.

To the extent that a contract is ambiguous, the intent of the parties is a question of fact that should be decided by a jury.  Klapp v. United Ins. Group Agy, Inc., 663 N.W.2d 447, 453-54 (Mich. 2003); Winthrop Resources Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 470 (8th Cir. 2004).  Given the parties'

---

[1]The Settlement Agreement has a choice of law provision, in which the parties agreed that the contract would be governed by Michigan law.

differing interpretations of the "60-day supply of new Pontiac and Chevrolet vehicles", and whether Shakopee met the "order" requirement, dismissal of this claim under Rule 12(b)(6) is not appropriate.

2.  Breach of Implied Covenant of Good Faith and Fair Dealing

In Count II of its Complaint, Shakopee asserts that GM acted in bad faith by entering into the Settlement Agreement with the objective of preventing Shakopee from meeting its target of selling 370 vehicles, which would deprive Shakopee of profits and a realistic chance of obtaining a GM truck dealership. Complaint ¶ 27.  Shakopee also alleges that GM led it to believe that GM could award it a GMC truck dealership, but GM's right to do so was significantly restricted and possibly barred.  Id. ¶ 28.

GM asserts that this claim should be dismissed as Michigan does not generally recognize a separate cause of action for breach of an implied covenant of good faith and fair dealing.  Belle Isle Grill Corp. v. City of Detroit, 666 N.W.2d 271, 279-80 (Mich. Ct. App. 2003).  Further, Michigan law has recognized such a claim only when one party to the contract makes its performance a matter of discretion.  Stephenson v. Allstate Ins. Co., 328 F.3d 822, 826 (6th Cir. 2003). "Discretion arises when the parties have agreed to defer decision on a particular

term of the contract." <u>Id.</u>  GM asserts there is no such contract in this case.  The Court disagrees.

The Settlement Agreement required the parties to negotiate a 60-day supply of vehicles to be shipped to Shakopee.  In other words, the Settlement Agreement deferred decision as to which particular cars would be ordered and shipped.  By deferring this decision, the parties each had a reasonable expectation that the other would negotiate in good faith.  Accordingly, the motion to dismiss this claim must be denied as well.

3.  Violation of Minn. Stat. § 80E.01 et seq.

In Count III of the Complaint, Shakopee asserts that GM violated Minn. Stat. §§ 80E.12(b) and 80E.13(a) by, among other things: 1) requiring Shakopee to order vehicles not required by law in order for Shakopee to obtain delivery of other vehicles ordered by Shakopee, and 2) delaying, refusing and failing to deliver vehicles in reasonable time and quantity.  Complaint ¶ 31.

Minn. Stat. § 80E.12(b) provides:

It shall be unlawful for any manufacturer, distributor, or factory branch to require a new motor vehicle dealer to do any of the following:

***
(b) order or accept delivery of any new motor vehicle, part or accessory

thereof, equipment, or any other commodity not required by law in order for the dealer to obtain delivery of any other motor vehicle ordered by the dealer . . .

GM asserts, and the Court finds, that there is no allegation anywhere in the Complaint that GM required Shakopee to "order or accept delivery of" any vehicles at all, or that GM conditioned shipment upon Shakopee ordering certain vehicles.  Accordingly, dismissal of Shakopee's claim pursuant to § 80E.12(b) is appropriate.

Minn. Stat. § 80E.13(a) provides:

It is unlawful and an unfair practice for a manufacturer, distributor, or factory branch to engage in any of the following practices:

(a) delay, refuse, or fail to deliver new motor vehicles or new motor vehicle parts or accessories in reasonable time and in reasonable quantity relative to the new motor vehicle dealer's facilities and sales potential in the dealer's relevant market area, after having accepted an order from a new motor vehicle dealer having a franchise for the retail sale of any new motor vehicle sold or distributed by the manufacturer or distributor, if the new motor vehicle or new motor vehicle parts or accessories are publicly advertised as being available for delivery or actually being delivered. This clause is not violated, however, if the failure is caused by acts or causes beyond the control of the manufacturer . . .

Minn. Stat. § 80E.13(a).

GM asserts that this claim should also be dismissed as Shakopee did not allege that it ordered a specific vehicle, and that delivery of such vehicle was

8

delayed or that GM refused to deliver.

The Court finds that the allegations in the Complaint sufficiently track the language of the statute to put GM on notice of a claim under § 80E.13(a). Shakopee has alleged that it ordered vehicles from GM, GM agreed to provide such vehicles to Shakopee, and that GM later refused to provide such vehicles. Complaint ¶¶ 8-10, 12 and 31.

IT IS HEREBY ORDERED that Defendant General Motors Corporation's Motion to Dismiss [Doc. No. 12] is GRANTED in part and DENIED in part. Count III is dismissed to the extent a claim is asserted under Minn. Stat. § 80E.12(b).  The motion is denied as to the remaining claims.

Date: February 27, 2008


s / Michael J. Davis
Michael J. Davis
United States District Court